UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DANIEL CHARLES WILLIAMS | § | |
| and CAROL WILLIAMS, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No._____ |
| VS. | § | |
| | § | |
| DISCOVER FINANCIAL SERVICES, LLC | § | **With Jury Demand Endorsed** |
| D/B/A DISCOVER, | § | |
| | § | |
| Defendant. | § | |

## <u>COMPLAINT</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiffs, Daniel Charles Williams ("Mr. Williams") and Carol Williams ("Ms. Williams") (collectively "Plaintiffs"), by and through their undersigned counsel, and for their Complaint against the defendant, Discover Financial Services, LLC, d/b/a Discover ("Defendant" or "Discover") and state as follows:

## I. INTRODUCTION

1.      Plaintiffs assert claims against Defendant for the willful, and knowing violation of the Telephone Consumer Protection Act ("TCPA"), Texas Debt Collection Act ("TDCA") Tex. Fin. Code § 392.001 *et seq*., the common law torts of invasion of privacy and unreasonable collection and for Defendant's violations of the chapter 7 discharge injunction of 11 U.S.C. §524(a) and seek to recover actual, statutory, and punitive damages, injunctive relief, legal fees and expenses against Defendant.

Complaint - Page 1

## II.  PARTIES

2.      Plaintiffs are natural persons residing in Collin County, Texas and who have resided there at all relevant times.

3.      Defendant is a foreign limited liability company which may be served by delivering citation to its registered agent, CT Corporation System, 350 N. St. Paul St., Suite 2900, Dallas, Texas 75201-4234.

4.      Defendant is a "debt collector" as defined by Tex. Fin. Code § 392.001(6).

5.      Defendant is a furnisher of consumer credit information to TransUnion, LLC ("TransUnion") and Experian Information Solutions, Inc. ("Experian"), two of the three (3) national consumer reporting agencies.

## III.  JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.  This Court has jurisdiction to consider the claims in this Complaint pursuant to 28 U.S.C. § 1331, 1334 and 1337(a), 28 U.S.C. §§2201-2202.

7.      Venue in this District is proper because Defendant transacts business in this District and Mr. Williams filed his bankruptcy case in this District.  Also, Plaintiffs reside in Collin County, Texas and Defendant placed calls into this District.

8.      Also, the conduct complained of occurred in this District at all material times.

## IV.  FACTUAL ALLEGATIONS

9.      On November 30, 2012, Plaintiff Mr. Williams filed a Chapter 7 bankruptcy case ("Bankruptcy Case") in case number 12-43222 in the Eastern District of Texas Bankruptcy Court.  A Discharge Order was signed and entered in the Bankruptcy Case on February 27, 2013.

Complaint - Page 2

As listed in the Certificate of Service of the Discharge Order, Defendant received a copy of the Discharge Order.

10.     Prior to Mr. Williams filing his Bankruptcy Case, Defendant asserted a pre-petition claim against him in an attempt to collect a consumer debt allegedly owed by him to Defendant.  The debt required Mr. Williams to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes.  In the bankruptcy petition Mr. Williams filed in his Bankruptcy Case, this claim at issue was listed in Schedule "F," identifying Defendant as an unsecured creditor for the claim pertaining to Account No. XXXX-XXXX-XXXX-4127 ("Account").

11.     On November 30, 2012, Mr. Williams filed a mailing matrix with the Bankruptcy Court that provided Defendant's correct address.

12.     On or about November 30, 2012, the Clerk of the Bankruptcy Court for the Eastern District of Texas mailed out the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines" to all creditors, including Defendant and other parties based on the mailing matrix previously filed with the Bankruptcy Court.  This mailing constituted formal notice to Defendant of the above Chapter 7 Bankruptcy.  This notice warned all creditors, including Defendant, in conspicuous language against violating the automatic stay pursuant to 11 U.S.C. §362.  The United States Postal Service did not return the notice sent to Defendant.  If the United States Postal Service did not return the notice, there is a presumption that Defendant received the notice mailed to it by the Clerk of the Bankruptcy Court.

13.     On February 27, 2013, the Bankruptcy Court issued an order granting Mr. Williams a discharge ("Discharge Order") (the said order followed Official Form B18, including the explanatory language contained therein).  The Discharge Order discharged Mr. Williams from

Complaint - Page 3

any liability for Defendant's pre-petition claim.  Included with the Discharge Order was an explanation of the general injunction prohibiting Defendant and others holding pre-petition claims from attempting to collect their claims against Mr. Williams.

14.     The Discharge Order was mailed out to all creditors and other parties listed on the mailing matrix previously filed the Bankruptcy Court.  This mailing constituted formal notice of Plaintiff's discharge and the replacement of the automatic stay with the discharge injunction of 11 U.S.C. §524(a).   The Discharge Order and its notice warned all creditors, including Defendant, in conspicuous language that collection of discharged debts was prohibited.  The Discharge Order and notice mailed to Defendant was not returned.  If the United States Postal Service has not returned the mailed Discharge Order and notice, there is a presumption that Defendant received the Discharge Order and notice mailed to it by the Clerk of the Bankruptcy Court.  A copy of the Discharge Order is attached herein as "Exhibit A" and is incorporated herein by reference.

15.     At no time did Defendant object to or dispute the details of the subject claim listed by Mr. Williams in the November 30, 2012 Schedules filed in his Bankruptcy Case.

16.     At no time during the Chapter 7 case did Mr. Williams reaffirm the debt at issue with Defendant.

17.     At no time during the Chapter 7 case was Defendant's pre-petition claim declared to be non-dischargeable.

18.     On numerous occasions during and after the Bankruptcy Case, Plaintiffs talked to employees and agents of Defendant by telephone and reminded them of Mr. Williams's Bankruptcy Case filing and discharge and told them not to call or contact them in the future.

19.     Despite the communications to Defendant from the Bankruptcy Court and Plaintiffs instructing Defendant to not contact Plaintiffs, Defendant, following the February 27, 2013 bankruptcy discharge, engaged in debt collection activity against Plaintiffs by: (1) transferring the indebtedness of the discharged debt at issue from Mr. Williams to Ms. Williams, who had not filed for bankruptcy; (2) sending Ms. Williams letters demanding she pay the debt on the Account; (3) sending Ms. Williams Account billing statements and payment coupons, as if she was listed as an account holder on the Account and liable for the discharged debt; (4) repeatedly calling Ms. Williams over two hundred (200) times on Mr. Williams's cellular telephone, in an effort to collect the discharged debt; and (5) reporting the Account on Ms. Williams's consumer reports with Equifax and Experian credit bureaus as past due 61-90 days, and that the Account had been closed at the credit grantor's request, when Ms. Williams never had an account with Defendant and the Account at issue was discharged in Mr. Williams's Bankruptcy Case. Relevant excerpts from Ms. Williams's Equifax and Experian Credit Reports are attached hereto as Exhibits "B" and "C," respectively, and are incorporated herein by reference.

20.     On June 17, 2013, Defendant made four (4) automated telephone calls from telephone number 800-347-3136 to Plaintiff Daniel Williams's cellular phone, phone number 972-672-8537 (hereinafter "Cell Phone"), leaving a voice mail asking for Carol Williams.  The calls were made at 9:54 a.m., 12:16 a.m., 5:09 p.m., and 6:40 p.m.

21.     On June 18, 2013, Defendant made five (5) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cellular Phone, leaving a voice mail asking for Carol Williams; the calls were made at 8:38 a.m., 9:21 a.m., 12:24 p.m., 2:23 p.m., and 4:29 p.m.

22.     On or about June 22, 2013, Defendant sent Ms. Williams a monthly statement and payment coupon for the Account at issue demanding payment of $14,627.26 by July 17, 2013,

even though the Account had been solely listed in Mr. Williams's name at all times.  A copy of this statement has been attached hereto as Exhibit "D" and is incorporated herein by reference.

23.     On June 25, 2013, Defendant made five (5) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone, leaving a voice mail asking for Ms. Williams; the calls were made at 9:30 a.m., 10:28 a.m., 3:22 p.m., 5:10 p.m., and 7:06 p.m.

24.     On June 26, 2013, Defendant made three (3) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone, leaving a voice mail asking for Ms. Williams, offering a special deal to settle the Account and instructing Ms. Williams to call Defendant at a telephone number provided; the calls were made at 9:57 a.m., 6:38 p.m., and 7:56 p.m.

25.     On June 27, 2013, Defendant made three (3) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone, leaving a voice mail asking for Ms. Williams, offering a special deal to settle the Account, and instructing Ms. Williams to call Defendant at a telephone number provided; the calls were made at 9:00 a.m., 3:38 p.m., 6:39 p.m., and 7:44 p.m.

26.     Also in June 2013, Defendant's Account Manager sent Plaintiff correspondence to Ms. Williams stating the balance on the Account was $14,627.26 and offering her the opportunity to settle the Account for "[a] one-time payment equal to 0% of your current balance or [t]welve monthly payments equal to 70% of your current balance."  The letter also states the offers are available until June 28, 2013 and instructs Ms Williams to call the Account Manager, Kathy Meyers, at the 1-800 phone number provided.  Moreover, the letter includes the Fair Debt Collection Practices Act Mini-Miranda warning stating "[t]his is an attempt to collect a debt and

any information obtained may be used for that purpose."  A copy of this letter is attached hereto as Exhibit "E" and is incorporated herein by reference.

27.     On June 28, 2013, Defendant made two (2) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 8:37 a.m. and11:00 a.m.

28.     On June 29, 2013, Defendant made four (4) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's cellular phone (972-672-8537); the calls were made at 8:30 a.m., 8:39 a.m., 12:26 p.m., and 2:16 p.m.

29.     On June 30, 2013, Defendant made four (4) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 8:27 a.m., 9:45 a.m., 12:46 p.m., and 3:31 p.m.

30.     On July 1, 2013, Defendant made five (5) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 9:09 a.m., 2:44 p.m., 3:52 p.m., 7:02 p.m., and 8:22 p.m.

31.     On July 2, 2013, Defendant made seven (7) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 8:12 a.m., 9:43 a.m., 11:02 am, 2:22p.m., 4:55pm, 6:50 p.m., and 8:31 p.m.

32.     On July 3, 2013, Defendant made five (5) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 9:01 a.m., 11:43 a.m., 2:02 p.m., 3:25 p.m., 5:39 p.m., and 7:30 p.m.

33.     On July 4, 2013, a legal and national holiday, Defendant made two (2) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 8:58 a.m. and 11:11 a.m.

34.     On July 5, 2013, Defendant made five (5) automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 11:43 a.m., 1:57 p.m., 4:46 p.m., and 6:47 p.m.

35.     On July 6, 2013, Defendant made two (2) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 9:13 a.m. and 10:21 a.m.

36.     On July 8, 2013, Defendant made five (5) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 8:58 a.m., 11.54 a.m., 3:48 p.m., 7:07 p.m. and 8:30 p.m.

37.     On July 9, 2013, Defendant made six (6) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cellular Phone; the calls were made at 9:26 a.m., 11:45 a.m.; 1:14 p.m., 3:48 p.m., 5:32 p.m. and 7:21 p.m.

38.     On July 10, 2013, Defendant made two (2) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 9:54 a.m. and 5:33 p.m.

39.     On July 11, 2013, Defendant made five (5) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 8:38 a.m., 9:48 a.m., 11:17 a.m., 12:42 p.m., 4:05 p.m., and 7:27 p.m.

40.     On July 12, 2013, Defendant made four (4) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 9:57 a.m., 11:58 a.m., 3:58 p.m. and 6:36 p.m.

41.     On July 13, 2013, Defendant made one (1) automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 9:43 a.m.

42.     On July 15, 2013, Defendant made three (3) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 1:43 p.m., 4:52 p.m. and 8:34 p.m.

43.     On or about July 15, 2013, Defendant sent Ms. Williams a letter representing that she was liable for the "Current Balance: $14,627.26" and "Amount Now Due: $14,627.26" on the Account and offering to make a "one time payment match option" on the Account.  The letter explained that any payment Ms. Williams made to Defendant that month would be matched by Defendant "dollar-for-dollar, up to $500.00," and she had "the opportunity to reduce your current balance up to $1,000.00 this month!"   Ms. Williams was instructed by Defendant to contact Stacey Monson at 1-800-347-3136 if she had questions about the offer.  A copy of this letter is attached hereto as Exhibit "F" and incorporated herein by reference.

44.     On or about July 16, 2013, Ms. Williams sent Defendant a certified letter disputing her liability on the Account, asking for proof of her liability, and demanding Defendant cease and desist calling her on her husband's cell phone and to stop sending her correspondence, statements and telephone calls.  She also informed Defendant that its collection actions had been causing her a lot of distress, aggravation and marital strife.  A copy of this letter and return receipt showing its delivery and receipt by Defendant are attached hereto as Exhibits "G" and "H," respectively.  Defendant has not responded to the letter as of September 1, 2013.

45.     On July 16, 2013, Defendant made three (3) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 10:07 a.m., 3:30 p.m. and 7:00 p.m.

Complaint - Page 9

46.     On July 17, 2013, Defendant made four (4) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 9:28 a.m.; 5:18 p.m., 6:51 p.m. and 8:48 p.m.

47.     On July 18, 2013, Defendant made five (5) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 8:17 a.m., 11:06 a.m. 2:25 p.m., 5:46 p.m. and 6:50 p.m.

48.     On July 19, 2013, Defendant made one (1) automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 8:37 a.m.

49.     On July 20, 2013, Defendant made four (4) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 8:37, 9:52 and 11:22 am; 12:45 p.m.

50.     On or about July 22, 2013, Defendant sent Ms. Williams a monthly statement and payment coupon for the Account, demanding she pay the amount of $14,627.26, even though the Account had always been solely in her husband's name.  A copy of this statement has been attached hereto as Exhibit "I" and is incorporated herein by reference.

51.     On July 22, 2013, Defendant made two (2) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 10:38 a.m. and 5:50 p.m.

52.     On July 23, 2013, Defendant made four (4) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone, leaving a voice mail asking for Ms. Williams; the calls were made at 9:32 a.m., 1:47p.m., 5:07 p.m. and 7:27 p.m.

53.     On July 24, 2013, Defendant made five (5) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 8:07 a.m., 9:39 a.m., 4:01 p.m., 5:38 p.m. and 7:40 p.m.

54.     On July 25, 2013, Defendant made six (6) automated telephone calls from telephone number 800-347-3136 to Plaintiff Mr. Williams's Cell Phone; the calls were made at 8:52 a.m., 11:24 a.m., 1:38 p.m., 3:13 p.m., 5:24 p.m. and 7:06 p.m.

55.     On or about July 25, 2013, Defendant sent Ms. Williams a letter advising her that her "Discover Card has been charged off as a bad debt" and that Defendant had "no option but to consider all means available to collect the amount due" which Defendant contended was $14,627.26.   The letter represented that Ms. Williams was liable on her husband's discharged Account, and she was instructed to contact Stacey Monson at 1-800-347-3136 to discuss her options on the Account and that Defendant "will even explain how you may be able to settle this debt for less than the balance you now owe."   A copy of this letter is attached hereto as Exhibit "J" and incorporated herein by reference.

56.     On July 26, 2013, Defendant made six (6) automated telephone calls from telephone number 800-347-3136 to Plaintiff Mr. Williams's Cell Phone; the calls were made at 8:14 a.m., 11:45 a.m., 1:35 p.m., 2:34 p.m., 4:15 p.m. and 7:43 p.m.

57.     On July 27, 2013, Defendant made two (2) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 8:53 a.m. and10:54 a.m.

58.     On July 28, 2013, Defendant made one (1) automated telephone call from telephone number 800-347-3136 to Plaintiff Daniel Williams's Cell Phone; the call was made at 8:59 a.m.

59.     On July 29, 2013, Defendant made two (2) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 12:42 p.m. and 4:38 p.m.

60.     On July 30, 2013, Defendant made two (2) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 12:13 p.m. and 7:43 p.m.

61.     On July 31, 2013, Defendant made two (2) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 10:57 a.m. and 12:53 p.m.

62.     On August 1, 2013, Defendant made four (4) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 11:09 a.m., 4.27 p.m., 6:12 p.m. and 7:18 p.m.

63.     On August 2, 2013, Defendant made five (5) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 11:15 a.m., 1:12 p.m., 3:36 p.m., 5:09 p.m. and 7:17 p.m.

64.     On August 3, 2013, Defendant made two (2) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 8:49 a.m. and 12:29 p.m.

65.     On August 5, 2013, Defendant made one (1) automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 8:37 a.m.

66.     On August 6, 2013, Defendant made three (3) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 1:07 p.m., 3:10 p.m. and 7:18 p.m.

67.     On August 7, 2013, Defendant made four (4) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 8:37 a.m., 9:16 a.m., 12:40 p.m. and 2:20 p.m.

68.     On August 8, 2013, Defendant made five (5) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 8:27 a.m., 1:05 p.m., 2:58 p.m., 6:20 p.m. and 8:09 p.m.

69.     On August 9, 2013, Defendant made four (4) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 11:38 a.m., 3:08 p.m., 3:36 p.m. and 6:39 p.m.

70.     On August 10, 2013, Defendant made two (2) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 8:17 a.m., and 12:01 p.m.

71.     On August 12, 2013, Defendant made four (4) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 9:11 a.m., 3:08 p.m., 6:12 p.m. and 8:38 p.m.

72.     On August 14, 2013, Defendant made five (5) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 10:36 a.m., 12:51 p.m., 2:12 p.m., 4:26 p.m. and 5:40 p.m.

73.     On August 16, 2013, Defendant made three (3) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 10:06 a.m., 4:29 p.m. and 7:01 p.m.

74.     On August 19, 2013, Defendant made five (5) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 8:19 a.m., 11:10 a.m., 3:07 p.m., 4:30 p.m. and 6:07 p.m.

75.     On August 20, 2013, Defendant made three (3) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 12:40 a.m., 6:28 p.m. and 7:36 p.m.

76.     On August 21, 2013, Defendant made four (4) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 11:05 a.m., 1:23 p.m., 3:22 p.m. and 5:32 p.m.

77.     On August 22, 2013, Defendant made six (6) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 9:12 a.m., 10:49 a.m., 11:54 a.m., 5:35 p.m., 6:37 p.m. and 8:22 p.m.

78.     On or about August 22, 2013, Defendant sent Ms. Williams a monthly statement and payment coupon for the Account, demanding payment of $14,627.26 by September 17, 2013, even though the Account was always solely in Mr. Williams's name.  A copy of this statement has been attached hereto as Exhibit "K" and is incorporated herein by reference.

79.     On or about August 24, 2013, Defendant sent Ms. Williams a letter with attached payment coupon, and information form, requesting she fill in the requested information and return the completed form to Defendant, such form seeking personal information and a payment proposal from her on the Account.  This letter stated she owed Defendant the amount of $14,627.26 on the Account.  Also, the letter informed Ms. Williams that "[t]his information is necessary to set up an equitable arrangement for both parties."  Ms. Williams was, again, instructed to contact Stacey Monson at 1-800-347-3136 to discuss her options with regard to the

Account.   A copy of this letter is attached hereto as Exhibit "L" and incorporated herein by reference.

80.    On August 30, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 10:41 a.m.

81.    On September 3, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 10:43 a.m.

82.    On September 10, 2013, Defendant made two (2) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 10:52 a.m. and 2:15 p.m.

83.    On September 11, 2013, Defendant made two (2) automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 10:34 a.m. and 4:17 p.m.

84.    On September 12, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 11:10 a.m.

85.    On September 13, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 10:49 a.m.

86.    On September 13, 2013, Defendant sent Ms. Williams a letter by e-mail stating her current balance on the Account was $14,627.26 and amount now due was $14,627.26. Defendant offered Ms. Williams a "one time payment match option" to reduce her current balance on the Account and for her to call Defendant immediately.   Ms. Williams was, again, instructed to contact Stacey Monson at 1-800-347-3136 to take advantage of the offer and to discuss important account information.   The letter also included the Fair Debt Collection Practices Act Mini-Miranda warning stating "[t]his is an attempt to collect a debt and any

Complaint - Page 15

information obtained may be used for that purpose."  A copy of this letter is attached hereto as Exhibit "M" and incorporated herein by reference.

87.     On September 16, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 2:14 p.m.

88.     On September 17, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 11:31 a.m.

89.     On September 13, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 10:49 a.m.

90.     On September 16, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 2:14 p.m.

91.     On September 17, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 11:31 a.m.

92.     On September 19, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 4:25 p.m.

93.     On or about September 20, 2013, Defendant sent Ms. Williams a letter by e-mail stating her current balance on the Account was $14,627.26 and amount now due was $14,627.26.  The letter informed Ms. Williams that Defendant was reviewing all available measures to collect on her account, that it is not too late to resolve the matter and that it is important that Ms. Williams contact Defendant.  Ms. Williams was, again, instructed to contact Stacey Monson at 1-800-347-3136.  The letter also included the Fair Debt Collection Practices Act Mini-Miranda warning stating "[t]his is an attempt to collect a debt and any information obtained may be used for that purpose."  A copy of this letter is attached hereto as Exhibit "N" and incorporated herein by reference.

Complaint - Page 16

94.     On or about September 23, 2013, Defendant sent Ms. Williams an Account Summary and Payment Information including an account statement with a payment coupon for her to detach and return with her payment, stating the current balance on the Account was $14,627.26 and amount now due was $14,627.26.  The statement also states the new balance on the Account was $14,627.26, the minimum payment was $14,627.26 and that the payment due date was October 17, 2013.  A copy of this letter is attached hereto as Exhibit "O" and incorporated herein by reference.

95.     On September 23, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 10:50 a.m.

96.     On September 28, 2013, Defendant sent Ms. Williams a letter with a payment coupon stating the current balance on the Account was $14,627.26 and amount now due was $14,627.26. The letter also states that her Discover Card had been charged off as a bad debt and that Defendant has no option but to consider all means available to collect the amount due.  The letter further instructed Ms. Williams to call Defendant and Defendant will explain how she may be able to settle this debt for less than the balance she now owes.  Ms. Williams was, again, instructed to immediately contact Stacey Monson at 1-800-347-3136 to discuss important account information.  The letter also included the Fair Debt Collection Practices Act Mini-Miranda warning stating "[t]his is an attempt to collect a debt and any information obtained may be used for that purpose."  A copy of this letter is attached hereto as Exhibit "P" and incorporated herein by reference.

97.     On September 30, 2013, Defendant made automated telephone calls from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the calls were made at 11:26 a.m. and 1:40 p.m.

Complaint - Page 17

98.     On October 1, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 11:20 a.m.

99.     On October 2, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 10:47 a.m.

100.    On October 3, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 10:47 a.m.

101.    On October 4, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 10:57 a.m.

102.    On October 7, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 11:09 a.m.

103.    On October 8, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 8:51 a.m.

104.    On October 9, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 10:54 a.m.

105.    On October 10, 2013, Defendant made an automated telephone call from telephone number 800-347-3136 to Mr. Williams's Cell Phone; the call was made at 8:31 a.m.

106.    On or about October 23, 2013, Defendant sent Ms. Williams an Account Summary and Payment Information including an account statement with a payment coupon for her to detach and return with her payment, stating the current balance on the Account was $14,627.26 and amount now due was $14,627.26.  The statement also states the new balance on the Account was $14,627.26, the minimum payment was $14,627.26 and that the payment due date was November 17, 2013.  A copy of this letter is attached hereto as Exhibit "Q" and incorporated herein by reference.

Complaint - Page 18

107.or about October 23, 2013, Defendant sent Ms. Williams and Account Summary

108.    The conduct of Defendant has proximately caused Plaintiffs past and future monetary loss, past and future mental distress and emotional anguish, past and future damage to Ms. Williams's credit and credit worthiness, and other damages that will be presented to the jury.

109.    Defendant knew and continues to know that a bankruptcy discharge order means the debt that has been discharged is no longer collectible *in personam*; but, Defendant has made a corporate decision to willfully and maliciously act contrary to its knowledge in its calculated decision to violate Plaintiffs' rights.

110.    After a reasonable time for discovery, Plaintiffs believe they will be able to show that all actions taken by employees, agents, servants, or representatives of any type for Defendant were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

111.    After a reasonable time for discovery, Plaintiffs believe they will be able to show that all actions taken by Defendant at issue were performed maliciously, wantonly, recklessly, intentionally and/or willfully, and were done with either the desire to harm Plaintiffs and/or with the knowledge that its actions would very likely harm Plaintiffs and/or that its actions were taken in violation of the law.

112.    After a reasonable time for discovery, Plaintiffs believe they will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts discharged in bankruptcy and Defendant is subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendant and similar companies.

## V.  GROUNDS FOR RELIEF - COUNT I

## TEXAS FINANCE CODE - UNFAIR DEBT COLLECTION

113.    Plaintiffs repeat, re-allege, and incorporate by reference all paragraphs above as if fully rewritten here.

114.    Defendant has violated the Texas Finance Code in numerous ways, including, but not limited to, the following:

a)   Tex. Fin. Code § 392.301(a)(8) which prohibits Defendant from taking an action prohibited by law; Defendant's attempts to collect the discharged debt constituted a violation of the bankruptcy discharge injunction currently in place and which was in place at all times at issue, such actions also constitute a violation of the Texas Finance Code;

b)   Tex. Fin. Code § 392.304(a)(8) prohibits Defendant from misrepresenting the character, extent, or amount of debt, or misrepresenting the status of a debt in a judicial or governmental proceeding; thus, by continuing to send statements to Ms. Williams showing a balance due on the Account and enclosing a remittance coupon, Defendant was misrepresenting that the debt was collectible, and that it was collectible against Ms. Williams personally when it was not by virtue of the Discharge Order and injunction and the fact that Ms. Williams was never an account holder or listed on the Account; and

c)   Tex. Fin. Code § 392.304(a)(19) prohibits Defendant's use of false representations or deceptive means to collect a debt; and since the debt at issue had been discharged in Mr. Williams's Bankruptcy Case, and Ms. Williams was not liable on the Account, the only conclusion that can be drawn is that Defendant was trying to collect the debt at issue in violation of the discharge injunction.  Also, the continued sending of statements and demands for payment on the Account to Ms. Williams, and making calls to her from the collection agent on behalf of

Complaint - Page 20

and hired by Defendant, was a deceptive means to collect a debt by Defendant.  Ms. Williams was never a named account holder or authorized user of the Discover card pertaining to the Account, which was solely in Mr. Williams's name at all times.  The bankruptcy discharge injunction was in effect at all material times and the discharged debt on the Account was uncollectible.

     d)  Under Tex. Fin. Code Ann. § 392.403, the said violations render Defendant liable to Plaintiffs for actual damages, statutory damages, for injunctive relief, costs, and reasonable attorneys' fees.

115.  Plaintiffs' injuries resulted from Defendant's gross negligence, malice, and/or actual fraud, which entitle Plaintiffs to punitive damages.

116.  Due to Defendant's conduct, Plaintiffs were forced to hire counsel and their damages include reasonable attorneys' fees incurred in prosecuting this claim.

## VI.  GROUNDS FOR RELIEF - COUNT 2

## COMMON LAW TORT OF UNREASONABLE COLLECTION

117.  Plaintiffs repeat, re-allege, and incorporate by reference the above paragraphs as if set forth herein in their entirety.  The above described debt collection efforts of Defendant constitute a pattern of harassment that is willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.

118.  Specifically, the representation that Ms. Williams was liable on the Account, the sending of Account billing statements to her; the demands for payment on the Account made to her, and the relentless automatic telephone calls made to her on Mr. Williams's cellular telephone in an attempt to collect on the Account and discharged debt, constitutes an unreasonable collection.

Complaint - Page 21

119.     The acts by Defendant were performed maliciously, wantonly, recklessly, intentionally, knowingly or willfully, and were performed with either the desire to harm Plaintiffs and/or with the knowledge that its actions would very likely harm Plaintiffs and/or that its actions were taken in violation of the law.  Accordingly, Plaintiffs are entitled to punitive damages.

120.     The conduct of Defendant at issue was the proximate and/or producing cause of Plaintiffs' actual damages including past and future economic loss, past and future extreme mental anguish, loss of time, damage to their credit, attorneys' fees and costs of court.

## VII.  GROUNDS FOR RELIEF - COUNT 3

### VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION

121.     Plaintiffs repeat, re-allege, and incorporate all previous paragraphs above as if set forth herein in their entirety.

122.     At all times material to this proceeding, Defendant had actual knowledge of Mr. Williams's Bankruptcy Case and that the debt at issue was discharged.

123.     Defendant failed to cease its debt collection activity on the Account and debt at issue when it became aware that Mr. Williams filed for bankruptcy protection and the debt had been discharged in his Bankruptcy Case, as evidenced by Defendant transferring the Account and its underlying debt to Carol Williams after Mr. Williams's bankruptcy discharge.  Defendant sent Ms. Williams statements and collection letters on the Account representing that she was personally liable for the discharged debt on the Account.  Defendant, also, repeatedly called Mr. Williams's cellular telephone seeking collection on the discharged debt and misreported the status of the Account and debt at issue to Experian and Equifax.

124.     Defendant's aforesaid actions were willful acts and constitute efforts to collect discharged debt from Mr. Williams in violation the discharge injunction of 11 U.S.C. §524(a).

Complaint - Page 22

Defendant's failure to comply with the aforesaid laws, in light of repeated notices from the Bankruptcy Court and Plaintiffs about Mr. Williams's Bankruptcy Case; the discharge of the debt at issue; and Defendant's failure to comply with its legal duties to accurately report and update its reporting of the account at issue with the credit reporting agencies, under 15 U.S.C. §1681s-2(a), illustrates its contempt for Federal law and the discharge injunction.

125.    The actions of Defendant in repeatedly calling Mr. Williams cellular telephone in its attempts to collect on the discharged debt, and misreporting information about the Account to Experian and Equifax, along with sending Ms. Williams statements and collection letters, constitute a gross violation of the discharge injunction as set forth in 11 U.S.C. § 362 and 524(a)(1)-(3).

126.    The facts and background stated above demonstrate that Defendant willfully violated the orders and injunctions of the Bankruptcy Court as they concern the Chapter 7 bankruptcy filed by Mr. Williams.  With this prima facie showing, the duty is on Defendant to show, as the only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability.  Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by Defendant, Mr. Williams must prevail on his §524(a) discharge violation claim, and Defendant must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to the bankruptcy filed by Mr. Williams.  Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant.  Any allegation of a good faith exception should not be allowed.

127.    Specifically, Defendant violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. §524(a)(2) which "operates as an injunction against the commencement,

or continuation of an action, the employment of process, or an act, to collect, recover or offset

any such debt as a personal liability of the debtors, whether or not the discharge of such debt is

waived;…'"

128.    No exceptions exist under 11 U.S.C. §524 or the other provisions of the United States

Bankruptcy Code or other applicable law that permit the conduct of Defendant at issue with

regard to the discharge injunction, as stated above.

129.    The orders and injunctions of the Bankruptcy Court cannot be waived, except by the

virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or

complaint.  None of the aforementioned has been approved by the Court here, and no waiver of

the orders or injunctions of the Court has occurred in the Bankruptcy Case pertaining to the

rights and remedies of Defendant.

130.    Also, there is no requirement of mitigation on the part of Mr. Williams that is relevant to

violations of the orders and injunctions of the Bankruptcy Court.  Any attempt to burden Mr.

Williams with policing the misconduct of Defendant would be a complete derogation of the law.

It is well settled that each party to an injunction or order of the Court is responsible for ensuring

its own compliance with the injunction or order and for shouldering the cost of compliance.  Any

such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy

Court in this proceeding, which is prohibited.  Any defense put forth by Defendant in this case

can only constitute a claim of mitigation, as no other reasonable explanation can be made for the

conduct and action of Defendant.  No allegation of a mitigation as a defense should be allowed.

131.    Mr. Williams has been injured and damaged by Defendant's actions and is entitled to

recover judgment against Defendant for actual damages and punitive damages, plus an award of

costs and reasonable attorneys' fees, for violations of 11 U.S.C. §524, and pursuant to the Court's powers under 11 U.S.C. § 105.

## VIII.  GROUNDS FOR RELIEF - COUNT 4

## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA")

132.    Plaintiffs restate and reiterate herein all previous paragraphs.

133.    In the last year preceding the filing of this Complaint, Defendant made and/or initiated a series of telephone calls to Mr. Williams's Cell Phone.

134.    Defendant made and/or initiated a series of telephone calls to the Cell Phone on the dates and times referenced above in paragraphs 20-21, 23-25, 27-32, 34-42, 45-49, 51-54, 56-78, 81-86, 88-93, 96, 98-105 (hereinafter referred to as the "Telephone Calls").

135.    The Telephone Calls were placed by Defendant's employees or agents.

136.    The Telephone Calls were initiated by an automatic dialing system.

137.    The telephone system utilized by Defendant to place the Telephone Calls has the capability to dial telephone numbers without human intervention.

138.    Defendant dialed the Mr. Williams's Cell Phone using its telephone system and without human intervention.

139.    The Telephone Consumer Protection Act, 47 U.S.C. § 227 *et. seq*, (the "TCPA"), prohibits making "any call (other than a call made for emergency purposes or made with the prior express of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a . . . cellular telephone service."  47 U.S.C. § 227 (b)(1)(A)(iii).

140.    Congress delegated authority to the Federal Communications Commission (FCC) to promulgate implementing regulations. 47 U.S.C. §227 (b)(2).   In relevant part, the FCC's

Complaint - Page 25

implementing regulations provide: "No person . . . may (I) initiate any telephone call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) To any telephone number assigned to a . . . cellular telephone service."

141.    The TCPA creates a private federal cause of action.  47 U.S.C. §227(b)(3).  A plaintiff who prevails in an action for damages under the TCPA is entitled to the greater of actual damages or $500 for each violation, plus additional damages up to the greater of $1,500 or treble actual damages for each violation committed willfully or knowingly. 47 U.S.C.  §227 (b)(3).

142.    The actions of Defendant in this case in repeatedly calling Ms. Williams on Mr. Williams's Cell Phone violated the provisions of the TCPA for which Mr. Williams seeks damages.  Even if the call(s) did not connect to Mr. Williams the attempt to make the call is still a violation.  *See Manufacturers Auto Leasing, Inc. vs. Autoflex Leasing, Inc*. 139 S.W.3rd 342, 347 (Tex. App.–Fort Worth 2004, pet denied) (citing FCC Enforcement Action Letter in Case No. EB-00TC-001).

143.    The Telephone Calls were willfully placed.

144.    The Telephone Calls were knowingly placed.

145.    The Telephone Calls were not made for emergency purposes.

146.    Mr. Williams did not give his prior express consent to be called using an artificial or pre-recorded voice or by use of an automatic dialing system.   Further, Plaintiffs instructed Defendant, on multiple occasions verbally and in writing, to cease and desist contacting them by telephone and other means.

147.    Defendant called Mr. Williams's Cell Phone over 200 times, during the times at issue, and left numerous voice messages asking for Ms. Williams, offering a special deal to settle the

Complaint - Page 26

Account and instructing Ms. Williams to call Defendant at a telephone number provided.  These messages are hereinafter collectively referred to as the "Messages."

148.    The dates and times that the Messages were made are listed hereinabove in paragraphs 20-21, 23-25, 27-32, 34-42, 45-49, 51-54, 56-78, 81-86, 88-93, 96, 98-105.

149.    The Telephone Calls were all directed to Ms. Williams.

150.    Ms. Williams is not a user of Mr. Williams Cell Phone.

151.    At the times the Telephone Calls were made, Ms. Williams was not the owner of the Account or listed on the Account in any way as a card holder, permissible user of card, signatory on any card, or responsible party.

152.    Mr. Williams never authorized Defendant to call him on his Cell Phone regarding the Account, and in fact, a written request was made to Defendant to stop calling him.

153.    During the period beginning on June 17, 2013 and continuing through the present time, Defendant's employees and agents have knowingly or willfully violated the TCPA by: (1) placing over (200) calls to Mr. Williams Cell Phone; (2) using an automatic telephone dialer system; and/or (3) leaving an artificial or pre-recorded voice to deliver messages.

154.    The actions of Defendant at issue were willful and intentional since Ms. Williams sent Defendant a letter by certified mail advising it that she was not liable on the Account and asking that no further telephone calls be made to Mr. Williams' Cell Phone.  Despite this notice, Defendant continued to make automatic telephone calls to Mr. Williams's Cell Phone, a willful and intentional violation of the TCPA.

155.    The calls adversely affect the privacy rights that the TCPA was intended to protect.

156.    Plaintiffs have complied with all conditions precedent to bring this action.

        WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray the Court will:

Complaint - Page 27

A.      Enter judgment in favor of Plaintiffs and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney fees as provided by Tex. Fin. Code Ann. § 392.403 and for unreasonable collections;

B.      Enter judgment in favor of Plaintiff Daniel Charles Williams for violations of the bankruptcy discharge injunction including actual damages, costs and attorney's fees, and the for Defendant's violation of the TCPA;

C.      Find that appropriate circumstances exist for an award of punitive damages to Plaintiffs;

D.      Award Plaintiffs pre-judgment and post-judgment interest as allowed by law; and

E.      Grant such other and further relief, in law or equity, to which Plaintiffs might show themselves justly entitled.

Respectfully submitted,

___/s/ James J. Manchee_____
William L. Manchee
SBOT 12891200
James J. Manchee
State Bar Number 00796988
Marilyn S. Altamira
State Bar Number 00796119
Manchee & Manchee, PC
12221 Merit Drive, Suite 950
Dallas, Texas 75251
(972) 960-2240 (telephone)
(972) 233-0713 (fax)
ATTORNEYS FOR PLAINTIFF

**JURY DEMAND**

Plaintiffs hereby demands a trial to a jury on all issues so triable.

11-6-13_____                      __/s/ *James J. Manchee*_____
Date                                           James J. Manchee

Complaint - Page 28